## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

APRIL HAND,

           Plaintiff,

    v.

KILOLO KIJAKAZI, Commissioner of Social Security,[1]

           Defendant.

CIVIL ACTION NO. 3:21-CV-00617

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff April Hand ("Hand") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). For the following reasons, the undersigned shall order that the Commissioner's decision be **VACATED** and the case be **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND AND PROCEDURAL HISTORY**

On July 5, 2018, Hand protectively filed an application under Title II for disability insurance benefits, claiming disability beginning November 25, 2016.[2] (Doc. 15-2, at 14). The Social Security Administration initially denied the application on September 17, 2018, prompting Hand's request for a hearing, which Administrative Law Judge ("ALJ") Michael J. Kopicki held on May 20, 2020. (Doc. 15-2, at 17). In a written decision dated June 9, 2020, the ALJ determined that Hand is not disabled and therefore not entitled to benefits under Title II. (Doc. 15-2, at 24). On February 16, 2021, the Appeals Council subsequently denied Hand's request for review. (Doc. 15-2, at 2).

On April 4, 2021, Hand commenced the instant action. (Doc. 1). The Commissioner responded on August 12, 2021, providing the requisite transcripts from Hand's disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Hand raising four bases for reversal or remand. (Doc. 18; Doc. 21; Doc. 26).

II. **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.

---

[2] The ALJ, the Commissioner, and Hand all contend that Hand applied for benefits under Title II of the Social Security Act on July 5, 2018, alleging a disability onset date of November 25, 2016. (Doc. 15-2, at 14; Doc. 18, at 2; Doc. 21, at 1-2).

20 C.F.R. § 404.1505(a).[3] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

### A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Hand is disabled, but whether the Commissioner's determination that Hand is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Hand "was not under a disability, as defined in the Social Security Act, at any time from November 25, 2016, the alleged onset date, through June 30, 2018, the date last insured. (Doc. 15-2, at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

C.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Hand "did not engage in substantial gainful activity during the period from her alleged onset date of November 25, 2016 through her date last insured of June 30, 2018" and therefore proceeded to step two of the analysis. (Doc. 15-2, at 16).

D.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that

the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Hand had three severe impairments: status post right wrist fracture with malunion of the right distal radius, right shoulder osteopenia, and right rotator cuff tendinitis (Doc. 15-2, at 16). Additionally, the ALJ noted that Hand had the following non-severe impairments: pelvic fracture, De Quervain's tendinitis, opioid use disorder, allergies, anxiety, and depression. (Doc. 15-2, at 16-18).

    E.  STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Hand's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 15-2, at 19). The ALJ considered listing 1.02(B) – Major dysfunction of a joint, involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. (Doc. 15-2, at 19).

F.  RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Hand alleged that she is disabled because of a right wrist fracture and problems using her right shoulder. (Doc. 15-2, at 19). The ALJ found that while Hand's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 20). The ALJ went on to detail Hand's medical records and treatment history. (Doc. 15-2, at 20-22). After weighing and considering the evidence, the ALJ determined that Hand had the, "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)," with additional limitations:

> [Hand] could lift and/or carry 10 pounds frequently and 20 pounds occasionally. She could stand and/or walk for six hours in an eight-hour workday with normal breaks and sit for six hours in an eight-hour workday with normal breaks. She could occasionally climb ladders, ropes, and scaffolds, and occasionally crawl. She could frequently climb ramps and stairs, stoop,

crouch, balance, and kneel. She could no more than occasionally handle, finger, and frequently reach overhead with the dominant right upper extremity.

(Doc. 15-2, at 19).

G.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, based on testimony adduced from a vocational expert at Hand's administrative hearing, the ALJ determined that Hand was unable to perform her past work as a cashier II, sales clerk, material handler, laborer – stores, or payroll clerk.. (Doc. 15-2, at 22). The ALJ found that Hand's "past work, especially the exertional requirements and the mental requirements, exceed the [RFC] assessment. It follows, then that if [Hand] cannot perform any of her past work within the [RFC], she would not be able to perform her past *relevant* work, either." (Doc. 15-2, at 22) (emphasis in original).

H. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Hand's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Hand could have performed. (Doc. 15-2, at 23). In making that determination, the ALJ relied on the vocational expert's testimony that Hand is able to perform the requirements of occupations such as school bus monitor, furniture rental consultant, and counter clerk with open positions ranging from 8,500 to 25,000 nationally. (Doc. 15-2, at 23-24). Accordingly, the ALJ determined that Hand was not disabled and denied her application for benefits. (Doc. 15-2, at 24).

IV. **DISCUSSION**

Hand advances four arguments on appeal. (Doc. 18, at 8). Specifically, Hand argues that the ALJ erred (1) by erroneously concluding that her de Quervain's tendonitis and left middle trigger finger were non-severe impairments, failing to consider her reasons for declining medical treatment, and that the RFC is not supported by substantial evidence; (2) by failing to rely upon any medical opinion when assessing her RFC; (3) by failing to fully develop the medical record; and (4) by denying Hand benefits as the appointment of a single Commissioner who is removable only for cause and serves a longer term than that of the President violates separation of powers. (Doc. 18, at 8). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 21, at 2).

A. THE ALJ FAILED TO CONSIDER HAND'S NON-SEVERE IMPAIRMENTS OF
BREATHING DIFFICULTIES AND SLEEP APNEA IN CRAFTING THE RFC.

In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable[4] and (2) severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An impairment is not considered severe if it does not significantly impact a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. As such, generally "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).

However, finding that an impairment is non-severe at step two "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Soboleski v. Comm'r of Soc. Sec.,* No. 14-3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015); *see also Hess*, 931 F.3d at 209 (explaining that because the functional limitation findings at step two and the RFC assessment at step four "serve distinct purposes and may be expressed in different ways

---

[4] Under the regulations, a medically determinable impairment is evaluated as follows:

> Your [medically determinable] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521.

. . . the findings at steps two and three will not necessarily translate to the language used at steps four and five."). Indeed, under the regulations, an ALJ is required to assess all of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. *See* 20 C.F.R. § 404.1545(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 (emphasis added).

Thus, "[e]ven if the ALJ properly determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.*, No. CV 18-2294 (JBS), 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019) (emphasis added). Similarly, "where the disability analysis continues to [s]tep [three], an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that the impairment continues to be factored in." *Rodriguez v. Berryhill*, No. CV 17-6884-KM, 2019 WL 1013343, at *9 (D.N.J. Mar. 1, 2019) (emphasis added); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's

limitations). However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *McClease v. Comm. of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *11 (E.D. Pa. Oct. 28, 2009) (citing *Nosse v. Astrue*, No. 08-cv-1173, 2009 WL 2986612, at *13 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiffs mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.")).

At step two, the ALJ considered Hand's De Quervain's tendinitis in her left hand and a left middle trigger finger ("left-hand impairments"), but found that they were not established as severe impairments. (Doc. 15-2, at 17). In determining that Hand's left-hand impairments were non-severe, the ALJ considered Hand's treatment records and symptoms. (Doc. 15-2, at 17). Specifically, the ALJ noted that Hand declined a treatment recommendation to receive injections. (Doc. 15-2, at 17; Doc. 15-7, at 148-49). Further, the ALJ stated that Hand's treatment records "do not document functional loss or record chronic signs and symptoms" and that she has not required additional treatment. (Doc. 15-2, at 17). The Commissioner argues that there was no evidence that Hand's left-hand impairments caused any limitation to do basic work activities. (Doc. 21, at 13). The Commissioner contends that "[Hand] first complained of pain in her left hand on January 30, 2018 – only six months prior to her date last insured." (Doc. 21, at 13). Further, the Commissioner states that Hand reported that her left-hand impairments improved with conservative treatment and that she declined an injection to treat her condition. (Doc. 21, at 13-14).

In contrast, Hand avers that the ALJ erred in finding that her left-hand impairments were non-severe. (Doc. 18, at 11). First, Hand points to the ALJ's reasoning that Hand declined a recommendation to get an injection to treat the condition. (Doc. 15-2, at 17, Doc. 15-7, at 148-49; Doc. 18, at 9-10). Hand argues that the ALJ failed to consider Hand's reasoning as to why she may have declined the treatment and did not ask her why she declined the treatment. (Doc. 18, at 10). Next, Hand takes issue with the ALJ's notation that "she did not require additional treatment." (Doc. 15-2, at 17; Doc. 18, at 10). Hand contends that she sought treatment from the time of diagnosis through the time immediately preceding the hearing. (Doc. 15-7, at 148, 291, 406, 413; Doc. 18, at 10-11). Finally, Hand argues that the ALJ's contention that "follow up records do not develop functional loss or record chronic signs and symptoms" is false and that the ALJ does not cite to the record in support of his assertion. (Doc. 15-2, at 17; Doc. 18, at 11). Instead, Hand points to evidence demonstrating a limited range of motion and reduced grip/pinch strength. (Doc. 15-7, at 148, 291, 406, 413; Doc. 18, at 11).

Even if the ALJ's finding that Hand's left-hand limitations were non-severe was erroneous, the ALJ continued to step three as he found that Hand had severe impairments of status post right wrist fracture with malunion of the right distal radius, right shoulder osteopenia, and right rotator cuff tendinitis. (Doc. 15-2, at 16, 19). As the ALJ ruled in Hand's favor when he found that Hand had multiple severe impairments of status post right wrist fracture with malunion of the right distal radius, right shoulder osteopenia, and right rotator cuff tendinitis, and thus proceeded to step three, any error in finding Hand's impairments non-severe may be considered harmless. (Doc. 15-2, at 16); *see Weitzel*, 967 F. Supp. 2d at 1097. However, the Court turns to whether the ALJ considered Hand's non-severe

impairments of left-hand impairments in his RFC determination. "[T]he Commissioner's procedures do not permit the ALJ to simpl[y] rely on his finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *see also Soboleski,* 2015 WL 6175904, at *2 (the ALJ's "simple phrase in the step two analysis does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC.").

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected:

"Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

Hand claims that the ALJ failed to consider the effects of her left-hand limitations in combination with her severe impairments when formulating her RFC. (Doc. 18, at 11-12). Hand further avers that "[t]he ALJ failed to include *any* limitations regarding the use of [her] left hand [and that t]here were *no* limitations included with regard to reaching, handling, fingering, or feeling." (Doc. 18, at 12). Hand contends that "[t]he ALJ's failure to include any limitations – or discuss the failure to include such limitations – is cause for remand." (Doc. 18, at 12).

Here, the ALJ failed to consider Hand's left-hand impairments in his RFC determination. As noted above, an ALJ may not rely on a finding of non-severity as a substitute for an RFC analysis. *See Kich*, 218 F. Supp. 3d at 355. Here, the ALJ does not

mention Hand's left-hand impairments in his RFC determination. Because the ALJ's RFC analysis did not include further discussion of evidence relevant to [Hand's left-hand impairments] or an explanation of why [Hand's] complaints were not credible, it appears that the ALJ's conclusion here was primarily based on [his] conclusion at step two that those symptoms had abated." *McClease*, 2009 WL 3497775, at *11; *see also Rivera v. Comm. of Soc. Sec.,* No. 1:15-cv-05354, 2016 WL 7377094, at *5 (D.N.J. Dec. 19, 2016) (remanding an ALJ's decision partially due to his failure to articulate how the claimant's de Quervain's tenosynovitis and tendinitis affected his RFC determination).

Given the ALJ's failure to consider Hand's left-hand impairments in his RFC analysis, it is unclear whether the ALJ fully considered "the limitations and restrictions imposed by all of [Hand's] impairments" in determining the RFC. *See* SSR 96-8p; 20 C.F.R. § 404.1545(a)(2); *Weitzel,* 967 F. Supp. 2d at 1097; *Soboleski*, 2015 WL 6175904, at *2. Therefore, regardless of whether Hand's conditions were erroneously considered non-severe impairments at step two, the Court is of the opinion that the RFC assessment is not supported by substantial evidence.

Finally, the Commissioner argues that any error by the ALJ regarding Hand's left-hand impairments would be harmless as the ALJ found that she was able to perform the occupation of school bus monitor which does not require the performance of any handling, fingering, or reaching. (Doc. 21, at 15). Hand argues that "a hypothetical question must include all of a claimant's functional limitations which are supported by the record." (Doc. 26, at 7).

The Third Circuit has been clear that "the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical

and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the hypothetical posed to the vocational expert fails to include all of the claimant's limitations, then the testimony proffered by the vocational expert cannot be considered substantial evidence. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Furthermore, the harmless error doctrine is to be applied sparingly and should not be used to excuse a procedural error "simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Evanitus v. Berryhill*, 2018 WL 1465276, at *11 (M.D. Pa. 2018) (quoting *Peak v. Colvin*, 2014 WL 888494, at *5 (M.D. Pa. 2014)) (internal quotations omitted).

The Commissioner asserts that if the ALJ wrongly neglected to include left-hand limitations in his hypothetical to the vocational expert, it must have been harmless because the ALJ (using the vocational expert testimony) found a job that did not require reaching, handling, and fingering. (Doc. 21, at 15). Third Circuit law holds that the vocational expert's testimony cannot constitute substantial evidence when the hypothetical is defective. *Evanitus*, 2018 WL 1465276, at *11 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004)). The ALJ used the vocational expert's testimony to find the representative occupations of school bus monitor, furniture rental consultant, and counter clerk. (Doc. 15-2, at 23-24). However, the ALJ based his hypothetical questions on an RFC assessment that was not supported by substantial evidence. *See supra*. A defective hypothetical results in the vocational expert's testimony not constituting substantial evidence, so the ALJ's dependence on it was not allowed. As such it was not harmless error for the ALJ to neglect to consider Hand's left-hand limitations when crafting the RFC and thus presenting the hypothetical questions to the vocational expert.

B. THE COURT DECLINES TO ADDRESS HAND'S REMAINING ARGUMENTS.

Because the Court finds that the ALJ's decision must be vacated based on his failure to consider her non-severe limitation of left-hand impairments, the Court declines to address Hand's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Hand's additional contentions could be futile given that the ALJ's reconsideration of the RFC may yield a different result.

V.   **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to **REMAND** for further proceedings.

VI.    CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Hand benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: August 26, 2022**                    s/ *Karoline Mehalchick*
                                   **KAROLINE MEHALCHICK**
                                   **Chief United States Magistrate Judge**